1  Karl R. Morthole (CA Bar No. 112565)
2  LAW OFFICES OF KARL R. MORTHOLE
   57 Post Street, Suite 801
3  San Francisco, California 94104
   Tele: (415) 986-0227
4  Fax: (415) 986-1734
5  E-mail: karl@mortholelaw.com

6  Attorney for Plaintiffs
   BRUCE A. BURROWS and
7  JAMES A. ROESSLER

8
                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                                      C 07 5354

11  BRUCE A. BURROWS and JAMES A.        CASE NO. _____
    ROESSLER,
12                                       **COMPLAINT**       **MHP**

13

14                                       1. CERCLA 107(a) FOR NECESSARY
                 Plaintiffs                  COSTS OF RESPONSE
15                                       2. HSAA
    v.                                   3. PUBLIC NUISANCE
16                                       4. CONTINUING NUISANCE
    DWIGHT W. PERRY, CARLTON L.          5. CONTINUING TRESPASS
17  PERRY, KWANG SUK LEE, KUI JA LEE,    6. CONTINUING NUISANCE
    NAM SUN PARK AND SEUNG HEE           7. NEGLIGENCE PER SE
18  PARK,                                8. BREACH/ENFORCEMENT OF LEASE
                                         9. WASTE
19                                       10. EQUITABLE AND IMPLIED
                 Defendants.                 INDEMNITY AND CONTRIBUTION
20                                       11. DECLARATORY RELIEF

21  _____/

22
         Plaintiffs, Bruce A. Burrows and James A. Roessler (the "Plaintiffs"), by and through their
23
    attorney, hereby allege as follows:
24

25                               **INTRODUCTION**

26      1.   This case arises from the Defendants' unlawful polluting and contamination of soil and

27  groundwater in connection with their operation of dry-cleaning businesses at leased premises at 7272

28
                                          1

San Ramon Road (the address was later renumbered to 7242), which is part of the Lamps Plus Plaza, in Dublin, California (the leased premises are hereinafter referred to as the "Property").

2.    Beginning in approximately April, 1985, and continuing until approximately March, 2000, inclusive, the Defendants permitted and caused perchloroethylene (sometimes also referred to as perchlorethene or perc and hereinafter "PCE") and other dry-cleaning chemicals that are hazardous to human health and the environment to be released into the soil and groundwater at the Property at which the Defendants operated their dry-cleaning businesses, as well as into areas adjacent to and downgradient from the Property.

3.    The Plaintiffs have never owned or operated any business at the Property, but instead are merely real estate brokers who provided services to the most recent buyer and seller in connection with a purchase and sale of the property which closed in March, 2005.

4.    In order to meet a condition of the buyer of the Lamps Plus Plaza, required as a pre-condition of the buyer's purchase and the close of escrow, the Plaintiffs agreed with the buyer, pursuant to a letter agreement dated February 28, 2005 (the "February 2005 Letter Agreement"), and without waiver or reduction in any way of their rights against any third party, such as the Defendants, to deposit equally, $100,000 each, from their commissions the total sum of $200,000 in an escrow or a mutually agreeable impound (the "escrow/impound"), for the purpose of paying initially for environmental investigation or remediation at the Property and in its vicinity, if any, that would be required by responsible government agencies.

5.    $200,000, consisting of $100,000 from each of the Plaintiffs' commissions, was in fact deposited in the escrow/impound, as agreed with the buyer by the Plaintiffs in the February 2005 Letter Agreement.

6.    Despite only having brokered the purchase and sale of the Property as part of the Lamps Plus Plaza, once the contamination was verified, the Plaintiffs worked cooperatively with the responsible government agency to ensure that the necessary investigation and clean up began, as required to protect the human and public health and the environment, and the waters of the State. The Plaintiffs notified the Defendants of the requirements for investigation and clean up, as the parties responsible for the release of hazardous substances, wastes, materials and pollutants causing contamination on, under, adjacent to, and downgradient from, the Property, and invited each of them to take over the investigation and clean up. However, despite that notification and invitation, and despite the fact that the Defendants were and are legally responsible for the costs of the investigation and clean up as the actual dischargers, the Defendants have declined to participate in or pay anything for the ongoing investigation and clean up.

7.    Since the sale of the Lamps Plus Plaza in March, 2005, Plaintiffs have incurred reasonable and necessary costs of response consistent with the National Contingency Plan for investigation at the Property, and more costs of investigation and remediation are anticipated. These costs have been paid from the escrow/impound, from the moneys deposited by the Plaintiffs and to all of which they were and are otherwise entitled.

8.    In so doing, the Plaintiffs have shouldered, and continue to shoulder, a disproportionate share, namely all, of the past and present costs, and, unless they receive the relief sought in this action, of the ongoing future costs associated with investigation and clean up of the Property, as well as all off-site areas affected by Defendants' polluting activities.

9.    The Plaintiffs, who are involved solely because of the contractual obligation they entered into as part of their brokerage services, for nearly two-and-one-half years have stood alone

1    as the only parties that actively continued to fund clean up and remediation activities designed to

2    protect public health and the environment, as well as the waters of the State.

3        10.    As a result of the contamination caused by Defendants, the Plaintiffs have incurred and

4    will continue to incur substantial damages and costs of response, including the costs of investigation,

5

6    removal, remedial actions, and response costs, to investigate, remediate, clean up and abate the

7    release and threatened release of hazardous substances and contamination resulting from

8    Defendants' activities at the property. The Plaintiffs therefore seek a declaration of responsibility of

9    the Defendants for and payment from Defendants for all past, present and future response costs

10    incurred as a result of Defendants' release of hazardous substances, wastes, materials and pollutants

11    (collectively "contaminants"). The Plaintiffs also seek recovery from the Defendants of their

12    attorneys fees and costs under applicable statutory provisions and the terms of the lease which the

13    Defendants have breached, the lease recovery claimed pursuant to an assignment of rights to the

14

15    Plaintiffs from the owner of the Property who was and is the Defendants' lessor and who was and is

16    the successor to and assignee of the Defendants' prior lessor. The Plaintiffs further seek

17    compensation for their damages and injunctive relief to remediate the harm caused or threatened by

18    the Defendants.

19

20                                **PARTIES**

21        11.    Plaintiff Bruce A. Burrows ("Burrows") is a natural person, and at all times relevant

22    herein, has been in the business of real estate brokerage and related investment activities. Mr.

23    Burrows operates and has his principal place of business in the City of Orinda, County of Contra

24    Costa, State of California.

25        12.    Plaintiff James A. Roessler ("Roessler") is a natural person, and at all times relevant

26    herein, has been in the business of real estate brokerage and related investment activities. Mr.

27

28                                    4

1   Roessler operates and has his principal place of business in the City and County of San Francisco,

2   State of California.

3       13.   Defendant Dwight W. Perry ("D. Perry") is a natural person and, from approximately

4   April, 1985, until approximately August, 1994, operated a dry cleaning business at the Property. D.

5   

6   Perry resides in the City of Castro Valley, County of Alameda, State of California.

7       14.   Defendant Carlton L. Perry ("C. Perry") is a natural person and, from approximately

8   April, 1985, until approximately August, 1994, operated a dry cleaning business at the Property. C.

9   Perry resides in the State of Oregon.

10      15.   At the times mentioned, each of the Defendants D. Perry and C. Perry was an agent,

11  servant, joint venturer, partner, and/or employee with the other and, at the times mentioned, was

12  

13  acting within the course and scope of such agency, service, joint venture, partnership, and/or

14  employment relationship with the advance knowledge, acquiescence or subsequent ratification of the

15  other.

16      16.   Defendant Kwang Suk Lee, ("K.S. Lee") is a natural person and, from approximately

17  August, 1994, until approximately December,1999, operated a dry cleaning business at the Property.

18  Upon information and belief, K.S. Lee resides in the City of San Leandro, County of Alameda, State

19  of California.

20  

21      17.   Defendant Kui Ja Lee ("K.J. Lee) is a natural person and, from approximately August,

22  1994, until approximately December,1999, operated a dry cleaning business at the Property. Upon

23  information and belief, K. Lee resides in the City of San Leandro, County of Alameda, State of

24  California.

25      18.   At the times mentioned, each of the Defendants K.S. Lee and K.J. Lee was an agent,

26  servant, joint venturer, partner, and/or employee with the other and, at the times mentioned, was

27  

28

acting within the course and scope of such agency, service, joint venture, partnership, and/or employment relationship with the advance knowledge, acquiescence or subsequent ratification of the other.

19.    Defendant Nam Sun Park ("N. Park") is a natural person and, from approximately December, 1999, until the present, operated and continues to operate a dry cleaning business at the Property. Defendant Sun resides in the City of Dublin, County of Alameda, State of California.

20.    Defendant Seung Hee Park ("S. Park") is a natural person and, from approximately December, 1999, until the present, operated and continues to operate a dry cleaning business at the Property. Defendant Park resides in the City of Dublin, County of Alameda, State of California.

21.    At the times mentioned, each of the Defendants N. Park and S. Park was an agent, servant, joint venturer, partner, and/or employee with the other and, at the times mentioned, was acting within the course and scope of such agency, service, joint venture, partnership, and/or employment relationship with the advance knowledge, acquiescence or subsequent ratification of the other.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

22.    This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*  This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 9613(b), 42 U.S.C. § 9607(a), 42 U.S.C. § 9613(f), 28 U.S.C. § 2201, 28 U.S.C. § 2202 and Federal Rules of Civil Procedure, Rule 57. This Court has supplemental jurisdiction of the state claims asserted in this action pursuant to 28 U.S.C. § 1367. The federal and state claims herein alleged are based on the same set of operative facts. Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims.

23.    Venue and intradistrict assignment is proper in this Court, in either the Oakland or San Francisco Divisions, under the provisions of 28 U.S.C. § 1391(b) and the local rules, as the property that is the subject of this action and a substantial portion of the events or omissions giving rise to these claims occurred in this judicial district, in Alameda County.  Venue is also proper under 42 U.S.C. § 9613(b) as the releases and threatened releases of hazardous substances, and the damages that are the subject of this action, occurred in the District.  All of the Defendants' activities, omissions and conduct pertinent to this action occurred in or near Dublin, California and continue to contaminate the environment in or near Dublin, Alameda County, California.

## GENERAL ALLEGATIONS

### History of the Property – The Perry Tenancy

24.    Pursuant to a "Shopping Center Lease Agreement" dated April 3, 1985 (the "1985 Lease"), Crow Canyon Dry Cleaners, a general partnership, as the Tenant, leased an area designated as a portion of Building A, 7272 San Ramon Road, in Dublin, California, the location of the leased area being illustrated on a plot plan attached as Exhibit "B" to the 1985 Lease.  As previously noted, the leased premises are herein referred to as the "Property."

25.    Defendants C. Perry and D. Perry executed the lease as partners in Crow Canyon Dry Cleaners.  The Landlord under the 1985 Lease was Dublin Town & Country Associates, with William F. Kartozian executing on behalf of the Landlord as partner.

26.    C. Perry and D. Perry were general partners together in the leasing of the Property and in the operation of the dry cleaning business at the Property, during their tenancy at the Property.

27.    The initial term of the 1985 Lease was ten (10) years, however, an "Addendum" was attached to the 1985 Lease, and the "Addendum" included, but was not limited to, an option to extend the term for an additional five (5) years.

28.    In an Addendum II, which was also attached to the 1985 Lease. C. Perry and D. Perry executed as the Tenant, and William F. Kartozian executed as the Landlord.

29.    The "Use of Leased Premises" stated in the "Fundamental Lease Provisions" of the 1985 Lease was to be as a "Dry cleaning plant, rental of carpet cleaning equipment and laundry and shoe repair agency businesses."

30.    Section 11 of the 1985 Lease, entitled "Use of Leased Premises," in Subparagraph A. included, but was not limited to, the following provisions:  (i) "Tenant shall use the Leased Premises only for the purpose or purposes expressly set forth in the Fundamental Lease Provisions and for no other purpose," and (ii) "Tenant understands and agrees that neither the enumeration in Subparagraph B., hereof, or the deletion from said Subparagraph B., of various specific purposes for which the Leased Premises cannot be used or occupied does not, directly or by implication, permit the use or occupancy of the Leased Premises for any purpose other than as specifically provided in the Fundamental Lease Provisions. . . ."

31.    Section 11 of the 1985 Lease, entitled "Use of Leased Premises," in Subparagraph B. included, but was not limited to, the following provision:  "If Tenant violates any of the provisions of this Section 11. Landlord: (1) may cancel this Lease . . . . and/or (2) may pursue any other remedy available at law or equity. . . ."

32.    Section 11 of the 1985 Lease, entitled "Use of Leased Premises," in Subparagraph C. included, but was not limited to, the following provision:  "Landlord shall not lease to another dry cleaners."

33.    Section 17 of the 1985 Lease, entitled "Compliance with Laws," in Subparagraph A (there was no Subparagraph B in Section 17), included, but was not limited to, the following provisions:  (i) "Tenant shall promptly comply with all laws, ordinances, orders and regulations

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

affecting the Leased Premises, and the building in which the same are situated and their cleanliness, safety, occupation and use." (ii) "Tenant shall not perform any acts or carry on any practices that may injure adjoining buildings or be a nuisance or menace to other persons or businesses in the area or disturb the quiet enjoyment of any Person." (iii) "Tenant shall not conduct or, with knowledge, permit to be conducted any waste or public or private nuisance on the Leased Premises or any portion of the Shopping Center within which the same are located." and (iv) "It is further agreed between Landlord and Tenant that Tenant will protect, indemnify, defend and save and keep Landlord, its agents, servants, employees, and/or its successors or assigns forever harmless and indemnified from and against any and all liability, penalties, damages, costs, expenses and attorneys' fees arising out of or by reason of: (a) any accident or other occurrence on or about the Leased Premises causing injury to persons or property whomsoever or whatsoever and Tenant will protect, indemnify, and save and keep harmless Landlord against and from any and all claim, loss, damage or expense arising out of any failure of Tenant in any respect to comply with the performance of all of the requirements and provisions of this Lease, and (b) Tenant's failure to prevent any employee, or any other person, from entering upon, or remaining in, any employment or place of employment upon the Leased Premises which is not safe or which does not comply with the terms of the Occupational Safety and Health Act of 1970 (29 USC Section 651 *et seq*) and all other applicable law pertaining thereto as they may now or hereafter exist and apply to the Leased Premises."

34.    Section 20 of the 1985 Lease, entitled "Insurance and Hold Harmless," in Subparagraph D, entitled "Hold Harmless and Waiver of Claims," included, but was not limited to, the following provisions: ". . . Tenant shall and herewith does forever indemnify, defend, hold and save Landlord, it (sic) agents, servants and employees free and harmless of, from and against any and all claims, liability, loss, cost, expense or damage whatsoever, including, but not by way of limitation,

attorneys' fees, on account of any loss, injury, death, or damage occurring on, in, or about the Leased Premises, or arising from the use or occupancy of the Leased Premises, or the violation of any law, rule, ordinance, or regulation."

35. Section 32 of the 1985 Lease, entitled "Miscellaneous," in Subparagraph B, entitled "Lease Binding on Successors," included, but was not limited to, the following provisions: "The terms, covenants and agreements herein contained shall bind and inure to the benefit of Landlord and Tenant, and each of their heirs, personal representatives, successors and assigns, subject to the provisions of this Lease. . . ."

36. Section 32 of the 1985 Lease, entitled "Miscellaneous," in Subparagraph C, entitled "Attorneys' Fees," stated in its entirety the following provisions: "In the event that legal proceedings are brought or commenced to enforce the terms of this Lease, the prevailing party shall be entitled to recover from the other party all costs and expenses of such proceedings, including reasonable attorneys' fees, whether or not any proceedings are prosecuted to judgment."

37. Pursuant to an "Extension of Lease" executed on August 8, 1994, by C. Perry and D. Perry, as the Tenant, and by Dublin Town & Country Associates, as the Landlord, the term of the 1985 Lease was extended through June 30, 2004, and the "Extension of Lease" included, among other provisions, a statement that the premises "are now known as 7242 San Ramon Road, Dublin, California."

### History of the Property – The Lee Tenancy

38. Pursuant to a two-page document, containing an "Assignment" dated August 8, 1994, executed by C. Perry and D. Perry as Assignors, and containing an "Acceptance of Assignment and Assumption" dated August 8, 1994, executed by K.S. Lee and K.J. Lee as Assignees, and containing a "Consent to Assignment" dated August 8, 1994, executed by Dublin Town & Country Associates,

a Partnership, as Lessor, the leasehold at the Property was assigned to the Lees under the terms of the 1985 Lease.

**History of the Property – The Park Tenancy**

39.    Pursuant to a two-page document, containing an "Assignment" dated December 6, 1999, executed by K.S. Lee and K.J. Lee as Assignors, and containing an "Acceptance of Assignment and Assumption" dated December 7, 1999, executed by N. Park and S. Park as Assignees, and containing a "Consent to Assignment" dated December 7, 1999, executed by Dublin Town & Country Associates, a Partnership, as Lessor, the leasehold at the Property was assigned to the Parks under the terms of the 1985 Lease.

**Defendants' Activities at The Property**

40.    The Perrys built the cleaners in approximately April, 1985, and operated it until approximately August, 1994, when it was sold to the Lees.

41.    During their operations from approximately April, 1985, until approximately August 1994, the Perrys used PCE as a dry-cleaning chemical and their operations resulted in releases of PCE to the Property which contaminated soil, soil gas and groundwater at and in the vicinity of the Property.

42.    The Perrys generated hazardous wastes as a byproduct of the dry-cleaning operations, some of which were picked up from the Property by a licensed hazardous waste hauler/transporter and transported to a permitted hazardous waste management facility.  Some of the hazardous wastes were discharged at the Property as part of the operations and as a result were improperly disposed of at the Property by the Perrys.

43.    The Lees operated the dry cleaners from approximately August, 1994 until approximately December, 1999, when it was sold to the Parks.

11

44.  During their operations from approximately August, 1994, until approximately December, 1999, the Lees used PCE as a dry-cleaning chemical and their operations resulted in releases of PCE to the Property which contaminated soil, soil gas and groundwater at and in the vicinity of the Property.

45.  The Lees generated hazardous wastes as a byproduct of the dry-cleaning operations, some of which were picked up from the Property by a licensed hazardous waste hauler/transporter and transported to a permitted hazardous waste management facility.  Some of the hazardous wastes were discharged at the Property as part of the operations and as a result were improperly disposed of at the Property by the Lees.

46.  The Parks operated the dry cleaners from approximately December, 1999, until the present, and they currently operate a dry cleaners at the Property.

47.  During their operations from approximately December, 1999, until approximately March, 2000, the Parks used PCE as a dry-cleaning chemical and their operations resulted in releases of PCE to the Property which contaminated soil, soil gas and groundwater at and in the vicinity of the Property.  In approximately March, 2000, the Parks changed their dry-cleaning operations so that PCE was no longer used, and it has not been used since that time.

48.  The Parks generated hazardous wastes as a byproduct of the dry-cleaning operations, some of which were picked up from the Property by a licensed hazardous waste hauler/transporter and transported to a permitted hazardous waste management facility.  Some of the hazardous wastes were discharged at the Property as part of the operations and as a result were improperly disposed of at the Property by the Parks.

///

///

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

**Discovery of Contamination**

49.    In late 2004, in connection with the activities surrounding the eventual sale of the Lamps Plus Plaza. in Dublin, California, by the previous owner to the current owner, the Plaintiffs retained an environmental consultant, AEI Consultants of Walnut Creek, California ("AEI"), to conduct a Phase I Environmental Site Assessment of the Lamps Plus Plaza.  In a report on that site assessment, dated December 10, 2004 (the "Phase I Report"), AEI identified what was referred to as a "recognized environmental condition" at the Property due to the historical and then-current operation of the dry cleaner businesses at the Property.  As part of the Phase I Report, AEI recommended a subsurface investigation to confirm or deny the presence of contamination from the dry cleaners on the Property.

50.    AEI performed a limited Phase II subsurface investigation at the Property on January 27, 2005.  Soil and groundwater samples were taken from three locations in the vicinity of the then-current dry cleaning machine and solvent storage to determine if a release had occurred at the Property.  That investigation indicated a release or releases of PCE had occurred at the Property which AEI reported to the Plaintiffs and the owner of the Property.  A report was prepared on this Phase II investigation dated February 8, 2005.

51.    The Alameda County Health Care Services Agency (hereinafter "County Health") in a letter dated August 30, 2005, commented on the Phase II investigation report and requested, among other things, preparation of a Site Conceptual Model ("SCM") and a workplan for further soil and groundwater investigation relating to the Property.

52.    AEI prepared a Site Investigation Workplan (the "SI Workplan") for the Property dated November 21, 2005, which included an SCM.

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

53.   County Health approved the SI Work Plan for the Property by letter dated November 29, 2005, and among other things, requested submission of a report by April 21, 2006.

54.   AEI prepared a Site Investigation Report for the Property dated April 14, 2006.

55.   By letter dated August 22, 2006 (pages 2 through 6 are dated August 20, 2006), County Health requested additional investigation for the Property.

56.   AEI prepared an Additional SI Workplan for the Property dated October 20, 2006.

57.   County Health approved the Additional SI Work Plan for the Property by letter dated November 6, 2006.

58.   The investigation went forward and was conducted on December 27, 2006, and January 15, 2007. A report on this investigation was prepared dated February 21, 2007.

59.   By letter dated May 9, 2007, County Health requested interim remedial action and indoor air sampling for and adjacent to the Property.

60.   A Vapor Intrusion Characterization Workplan for and adjacent to the Property dated June 15, 2007, was prepared by AEI and submitted to County Health.

61.   AEI has conducted this work and a report is pending.

62.   All costs and expenses for the workplans, work and reports described above were reasonable and necessary and were incurred by the Plaintiffs, consistent with the National Contingency Plan and in accordance with the requirements of the responsible oversight regulatory agency, County Health.

63.   Based on various investigations, AEI has identified the presence of a number of hazardous substances and in the soil, soil gas and groundwater at and adjacent to the Property, including but not limited to PCE.

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

64.   The hazardous substances, wastes, materials, pollutants or contaminants, including but not limited to, the chemicals identified above (collectively "contaminants"), remain on the Property to this day or have migrated or threaten to migrate through the environmental media to other locations on and off of the Property

### Plaintiffs' Efforts to Ensure Response by All Responsible Parties

65.   During the preliminary investigations identifying the source of contamination at the Property, the Plaintiffs, who have never owned nor conducted any operations whatsoever causing contamination at the Property, worked cooperatively with County Health.  The Plaintiffs worked to identify the potentially responsible parties ("PRPs") for the existing contamination both on and off of the Property.

66.   Through the Plaintiffs' efforts, the Defendants were identified as PRPs responsible for the activities, conduct and omissions that caused or permitted the release of contaminants at the Property.  The Plaintiffs notified the Defendants of the requirements of County Health and of the Plaintiffs' agreements and action in accordance with County Health.

67.   Despite Plaintiffs' efforts, and despite their status as PRPs, the Defendants have not accepted any responsibility for necessary response actions at the Property.

### Compliance with the National Contingency Plan and Applicable State Equivalents

68.   Since 2004, all of the investigations, clean up, response and remedial actions have been conducted under the oversight of the State, through County Health as the local oversight program, in accordance with the governing regulations.  As such, all activities conducted at the Property, or relating to contamination on, under, adjacent to or downgradient from the Property  have been conducted in compliance with the requirements of CERCLA, the NCP regulations and the requirements of the State statutes, regulations and Executive Orders governing implementation of

15
**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

remediation, removal, response, clean up, investigation and abatement under HSAA, the State equivalent to CERCLA.

**Defendants' Refusal to Fund Investigation and Clean Up Activities**

69.    Beginning in 2005, the Defendants have refused to pay, even on an interim basis, for investigation and clean up at, under, adjacent to, or downgradient from the Property.

70.    Despite the Defendants' recalcitrance and refusal over time and presently to fund any of the necessary ongoing investigation and response costs for the Property, the Plaintiffs are the sole parties that have continually contributed money to implement investigation and response regarding the Property, pursuant to the February 2005 Letter Agreement and with the cooperation of the buyer, now owner.

**FIRST CLAIM FOR RELIEF**
**(CERCLA SECTION 107(A) FOR NECESSARY COSTS OF RESPONSE)**

71.    The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

72.    The Property is a "facility" within the meaning of 42 U.S.C. § 9601(9). Defendants, and each of them, are "persons" within the meaning of 42 U.S.C. § 9601(21). The contaminants located in the soil and ground water at, on, or under the Property, including but not limited to PCE, are "hazardous substances" within the meaning of 42 U.S.C. § 9601(14).

73.    Under Section 107 of CERCLA, 42 U.S.C. § 9607, the Plaintiffs seek recovery of necessary costs of response and payment from all Defendants, and in the nature of implied contribution, for the Plaintiffs' outlays of all past, present, and future necessary response costs incurred in response to the release of hazardous substances at or affecting the Property. As the past and current operators of the Property, and as the persons and entities responsible for the release and

16

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

continued threat of the release of hazardous substances into the soil, ground water and environment, Defendants, and each of them, are liable for the contamination pursuant to 42 U.S.C. § 9607(a).

74.    The Plaintiffs have incurred, and will continue to incur, necessary response costs, including costs of investigation, removal and/or remedial actions, in the investigation, clean up and abatement of the releases and threatened releases of hazardous substances from all of the Defendants' operations and activities at the Property, including but not limited to the continuing cost of implementing the requirements of County Health.  All of the necessary response costs incurred and to be incurred by the Plaintiffs are a result of the contamination caused to the Property by all of the Defendants.

75.    All costs incurred, or to be incurred, by the Plaintiffs in connection with the investigation and remediation of the Property, including the surrounding adjacent and downgradient areas, are necessary costs of response consistent with the provisions of CERCLA and the National Contingency Plan.

76.    The Plaintiffs continue to incur response costs and other costs in connection with the investigation and remediation of the Property as a result of ongoing efforts to clean up, remediate and remove released hazardous substances from the environment.  There has been no completion of a removal action, nor has it been six years since the initiation of a remedial action within the meaning of 42 U.S.C. § 9613(g).

77.    Defendants, and each of them, are jointly and severally liable to the Plaintiffs pursuant to 42 U.S.C. § 9607(a) for all or part of the past, present, and future necessary costs of response, including without limitation, investigation and remediation expenses, attorneys' fees, oversight costs and interest, resulting from the release by Defendants of hazardous substances in connection with

Defendants' operations and activities at the Property, in an amount to be determined at the time of trial.

78.    Pursuant to 42 U.S.C. § 9613(g)(2), the Plaintiffs are entitled to a declaratory judgment that Defendants, and each of them, are liable in any subsequent action by the Plaintiffs to recover further response costs or damages incurred in response to the release by Defendants of hazardous substances at and from the Property.

## SECOND CLAIM FOR RELIEF
### (HSAA SECTIONS § 25363 & 25399)

79.    The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

80.    Defendants, and each of them, released, within the meaning of California Health and Safety Code § 25320, hazardous substances at and from the Property, within the meaning of HSAA, Health and Safety Code § 25316.

81.    Defendants, and each of them, are responsible parties and/or liable persons within the meaning of HSAA, Health and Safety Code § 25323.5.

82.    The Plaintiffs have incurred, and will continue to incur, response costs, including costs of investigation, removal and/or remedial actions, in the investigation, clean up and abatement of the releases and threatened releases of hazardous substances from all of the Defendants' operations and activities at the Property, including but not limited to the continuing cost of implementing the requirements of County Health, all pursuant to HSAA and CERCLA and therefore are entitled to contribution and indemnity from defendants under HSAA, Health and Safety Code § 25363(e) and § 25399.

83.    The Plaintiffs, who have continued at their sole expense to carry out necessary actions in agreement and accordance with the requirements of County Health (in contrast to the other PRPs

18

which have each failed, despite demands to do so) to fund the required activities before and since 2005), are in compliance with any and all directives from County Health, and therefore are entitled to seek treble damages from the Defendants pursuant to HSAA, Health and Safety Code § 25398.17.

84.    The Plaintiffs have provided a copy of this Complaint to the Director of the State's DTSC, Maureen Gorsen, as of the date this Complaint was served on the other parties pursuant to the notice of service herein.

### THIRD CLAIM FOR RELIEF
### (PUBLIC NUISANCE)

85.    The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

86.    The acts and/or omissions of the Defendants now constitute and have constituted in the past a public nuisance in that the contamination constitutes injury and further risk of injury to public health and safety and to the environment.  Said public nuisance is specially injurious to the Plaintiffs standing in the shoes of the owner of real property at and contiguous to the Property.

87.    The Defendants were or are and each of them, at various times, was or is the operator, lessee, and/or was or is in possession and control of the Property.

88.    The Defendants, while occupying, conducting operations on, providing, maintaining, and/or managing portions of the Property, had a duty at all times to avoid the discharge or release of hazardous substances or contaminants in a manner that would cause injury to the Plaintiffs, the public, and the environment.

89.    At various times, the Defendants used, controlled, and/or operated the Property in such a manner as to cause, or allowed to be caused, release(s) of hazardous substances or contaminants onto the Property.  In addition, the Defendants at various times since used, controlled, and/or

19

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

operated the Property in such a manner as to cause, or allow to be caused, release(s) of hazardous substances or contaminants that constitute a risk to public health and safety and the environment.

90.    The aforementioned conduct of the Defendants and the conditions created thereby constitute a public nuisance within the meaning of Section 3480 of the California Civil Code in that it affects the community and neighborhood surrounding the Property.  The Plaintiffs allege that the acts of the Defendants have caused an injury and further risk of injury to public health and safety and to the environment.

91.    The acts and/or omissions of the Defendants constitute a continuous nuisance as the nuisance is one that could have been abated by reasonable means.

92.    At all times mentioned herein the acts and/or omissions of the Defendants have caused hazardous substances and contaminants, including but not limited to PCE and other toxic substances and contaminants to be discharged into the soil, ground water and environment at, under and on the Property, and in fact, the discharge of such substances and contaminants continues to contaminate the Property.

93.    As a direct and proximate result of the Defendants' wrongful conduct, acts and/or omissions, the public health and safety and environment has been injured and the Plaintiffs have suffered special injuries in that the Plaintiffs' free use and comfortable enjoyment of the Property has been obstructed and impaired.  As a further direct and proximate result of the acts and/or omissions of the Defendants, the Plaintiffs have suffered damages in an amount to be determined at the time of trial.

///

///

COMPLAINT
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

## FOURTH CLAIM FOR RELIEF
## (CONTINUING NUISANCE)

94.   The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

95.   Rights as owners of the Property and as Landlords under the applicable leases and assignments thereof have been assigned to the Plaintiffs.

96.   As herein above alleged, the Plaintiffs have the inalienable right to own, enjoy, and use the Property without interference by the Defendants.

97.   Each of the Defendants, at various times as stated elsewhere in this complaint, was the operator, lessee, and/or was in possession and control of the Property.

98.   Each of the Defendants, while occupying, conducting operations on, providing, maintaining, and/or managing portions of the Property, had a duty at all times to avoid the discharge or release of hazardous substances in a manner that would cause injury to the Plaintiffs, the public, and the environment.

99.   At various times, the Defendants used, controlled, and/or operated the Property in such a manner as to cause, or allowed to be caused, release(s) of hazardous substances onto the Property. In addition, the Defendants at various times, used, controlled, and/or operated the Property in such a manner as to cause, or allow to be caused, release(s) of hazardous substances onto the Property which then migrated throughout the Property property, as well as adjacent to and downgradient from the Property.

100.  The aforementioned conduct of the Defendants and each of them constitutes a continuing nuisance within the meaning of Section 3479 of the California Civil Code in that it is injurious and/or offensive to the senses of the Plaintiffs and/or substantially and unreasonably interferes with comfortable enjoyment of its property and/or unlawfully obstructs the free use, in the

21

customary manner. of the Property. The Plaintiffs have been continuously damaged by the condition wrongfully created and maintained by the Defendants. The contamination created by the Defendants has been. and is a continuing nuisance which adversely impacts the use and/or value of the Property and other property. as the impact of the nuisance caused by the Defendants' acts and omissions is one that could have been abated by reasonable means.

101. The conduct of the Defendants also constitutes a private nuisance within the meaning of Section 3481 of the California Civil Code in that it has. and continues to impact the Property. as to which certain rights of ownership have been assigned to the Plaintiffs.

102. At all times mentioned herein the acts and/or omissions of the Defendants have caused hazardous substances. including but not limited to PCE and other toxic substances and contaminants to be discharged into the soil. ground water and environment at. under and on the Property. and in fact. the discharge of such substances and contaminants continues to contaminate the Property.

103. As a direct and proximate result of the Defendants' wrongful conduct. the Plaintiffs have suffered economic damages including. but not limited to. lost use of property. denial of useful and quiet enjoyment of property. impairment of the Property and significant cost and expense related to the investigation and remediation of the hazardous substances and contaminants on. under. adjacent to. and downgradient from the Property and surrounding areas.

104. As a further direct and proximate result of the acts and/or omissions of the Defendants. the Plaintiffs have suffered damages in an amount to be determined at the time of trial.

### FIFTH CLAIM FOR RELIEF
### (CONTINUING TRESPASS)
### [AGAINST THE PERRYS AND THE LEES]

105. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

22

106. The foregoing acts and/or omissions of the Perry Defendants and the Lee Defendants, constitute a continuing trespass upon the Property.

107. The foregoing acts and/or omissions of the Perry and Lee Defendants created an intentional unauthorized presence upon the land when those Defendants failed to remove the contamination they caused, as those Defendants had a duty to remove such contaminants from the Property and the surrounding areas.

108. The acts and/or omissions of the Perry and Lee Defendants constitute a continuous trespass as the trespass is one that could have been abated by reasonable means.

109. As a direct and proximate result of the acts and/or omissions of the Perry and Lee Defendants, the Plaintiffs have suffered damages in an amount to be determined at the time of trial.

110. Additionally, as a result of those Defendants' trespass, the Plaintiffs are also entitled to an injunction requiring those Defendants to remove fully the contamination from and remediate the Property in accordance with all applicable federal, state and local laws, enjoining them from disposing of or allowing the continued release of additional contaminants because of the residual contamination left on the Property.

### SIXTH CLAIM FOR RELIEF
### (NEGLIGENCE)

111. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

112. The Defendants and each of them owed and owes the Plaintiffs a duty of reasonable care to prevent and/or properly remediate the release of contaminants, hazardous substances, materials, wastes and/or pollutants into the soil, groundwater, surface and environment at the Property, and contaminating adjoining or nearby real property, including the Property, as well as a duty to remediate and avoid damage to human health and the environment.

23

113. The Defendants breached their duties to the Plaintiffs by: (1) negligently, grossly negligently and/or recklessly permitting the release of PCE and other contaminants to contaminate the soil, ground water and environment at the Property and to migrate to and contaminate other areas of the Property (both on and off of the Property); and (2) failing to fully and completely investigate, clean up and remediate the damage caused by such contamination.

114. The Defendants, while occupying, conducting operations on, providing, maintaining and/or managing a portion of the Property, had a duty at all times to avoid the discharge or release of hazardous substances or contaminants in a manner which would cause injury to the Plaintiffs, the public, and the environment.

115. At all relevant times, the Defendants knew or should have known of the presence of hazardous substances or contaminants on the leasehold created by its ongoing dry cleaning operations, and knew or should have known of the fact that the contaminants had caused or contributed to the contamination on, off, under, adjacent to and downgradient of the Property. The Plaintiffs are informed and believe that, by the Defendants' acts and omissions, the Defendants negligently failed to exercise due care, thereby proximately causing hazardous substances or contaminants to be released onto and into the Property and surrounding area.

116. At all relevant times, the Plaintiffs have acted to mitigate damages by paying a disproportionately large share of the costs associated with the Defendants' negligence in implementing the State-approved investigations, remediation and clean up activities.

117. As a direct and proximate result of the negligent acts or omissions of the Defendants, the Plaintiffs have suffered damages, including but not limited to lost use of the Property, denial of useful and quiet enjoyment of the Property and significant cost and expense related to the

investigation and remediation of the hazardous substances or contaminants on. under. adjacent to. and downgradient of the Property and the surrounding areas.

118. Additionally. as a result of the Defendants' negligence. the Plaintiffs are also entitled to an injunction requiring the Defendants to remove fully the contamination from and remediate the Property in accordance with all applicable federal. state and local laws. enjoining the Defendants from disposing of or allowing the continued release of additional contaminants because of the residual contamination it left on the Property.

**SEVENTH CLAIM FOR RELIEF**
**(NEGLIGENCE PER SE)**

119. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

120. The Defendants at various times. were obligated to comply with certain ordinances. statutes. and regulations governing use and/or ownership of the Property. In particular. the Defendants were. at various times. obligated to comply with federal and State ordinances. statutes. and regulations governing the storage. use and/or release(s) of hazardous substances and wastes at the Property and nearby areas. and governing the Defendants' activities at the Property. These certain ordinances. statutes. and regulations set the minimum standard of care required of the Defendants in the use and/or ownership of the leasehold at the Property.

121. The Defendants failed to comply with such certain ordinances. statutes. and regulations governing use of the Property. particularly ordinances. statutes. and regulations governing the storage. use and/or release(s) of hazardous substances or contaminants at the Property and nearby areas by using the Property in a manner that resulted in the contamination of the Property and the surrounding areas. In violating the ordinances. statutes. and regulations. the Plaintiffs aver that the

Defendants failed *per se* to operate the Property in a reasonable manner, resulting in injury and damage to the Plaintiffs.

122. The Plaintiffs are members of the class of persons for whose protection those ordinances, statutes, and regulations were enacted.

123. The foregoing acts and/or omissions by the Defendants constitute negligence *per se* in violation of the laws and/or regulations of the United States and the State.

124. As a direct and proximate result of the acts and/or omissions of the Defendants, the Plaintiffs have suffered injuries in that the Plaintiffs' free use and comfortable enjoyment of the Property have been obstructed and impaired.

125. As a further direct and proximate result of the acts and/or omissions of the Defendants, the Plaintiffs have suffered damages in an amount to be determined at the time of trial.

### EIGHTH CLAIM FOR RELIEF
### (BREACH/ENFORCEMENT OF LEASE)

126. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

127. The Defendants violated Section 11 of the 1985 Lease as assigned and amended, thereby breaching the lease, by using the Property for purposes other than those allowed on the leased premises, namely for the release and/or disposal of PCE and other hazardous substances which came to be contaminating the soil, soil gas and groundwater at, under and in the vicinity of the Property.

128. The Defendants violated Section 17 of the 1985 Lease as assigned and amended, thereby breaching the lease, by failing to comply with all laws, ordinances, orders, and regulations affecting the Property, during their occupancy and operation thereof, by leaking, spilling, releasing, discharging or disposing or permitting the leaking, spilling, releasing, discharging or disposing of

26

PCE. other chemicals and other hazardous substances at the Property. and otherwise breached the express provisions of Section 17 through their acts and practices that injured adjoining buildings. constituted waste and created a nuisance at and emanating from the Property. disturbed the quiet enjoyment of the Property and neighboring premises which were and are portions of the Lamps Plus Plaza shopping center.

129.    In particular, the Defendants were. at all times. obligated to comply with federal and state ordinances. statutes, and regulations governing the storage. use. disposal and/or release(s) of hazardous substances and wastes at the Property and nearby areas. and governing the Defendants' activities at the Property. These certain ordinances. statutes. and regulations set the minimum standards of care required of the Defendants in the use and/or ownership of the leasehold at the Property. Failure to meet those standards of care at the Property was breach by each and every one of the Defendants of the 1985 Lease as amended and assigned.

130.    Furthermore. the actions and/or omissions of the Defendants have caused such injury. namely the contamination of soil. soil gas and groundwater. earlier alleged. that the Defendants are bound to make payments to and otherwise make the Plaintiffs whole. as the Defendants agreed. in Section 17 of the 1985 Lease as assigned and amended. to protect. indemnify. defend. and save and keep. among others. the assigns of the landlord forever harmless and indemnified from and against any and all liability. damages. costs. expenses and attorneys' fees arising out of or by reason of any accident or other occurrence on or about the Property causing injury to persons or property whomsoever or whatsoever. and against and from any and all expenses arising out of the Defendants' failure in any respect to comply with the performance of all the requirements and provisions of the 1985 Lease that would have prevented the contamination. The Plaintiffs hereby claim enforcement of all Defendants' obligations thereunder.

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

131. The Defendants are bound and obligated, by Section 20 of the 1985 Lease as amended and assigned in accordance with its terms, under the indemnity, defense, and hold and save free and harmless provisions therein, to and in favor of the Plaintiffs, as assignees of the landlord. The Plaintiffs hereby claim enforcement of all Defendants' obligations thereunder.

### NINTH CLAIM FOR RELIEF
### (WASTE)

132. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

133. The Defendants, by causing or permitting the release of hazardous substances, materials, wastes, contaminants and/or pollutants at, on, and under the soil, ground water and environment at the Property has now or in the past diminished the value of the Property. The foregoing acts and/or omissions of the Defendants therefore constitute waste upon the Property pursuant to California Code of Civil Procedure § 732 and other applicable law.

134. As a direct and proximate result of the acts and/or omissions of the Defendants, the Plaintiffs have suffered damages in an amount to be determined at the time of trial, including treble damages for any such waste.

135. Additionally, as a result of the Defendants' waste, the Plaintiffs are also entitled to an injunction requiring the Defendants to remove fully the contamination from and remediate the Property in accordance with all applicable federal, state and local laws, enjoining them from disposing of or allowing the continued release of additional contaminants because of the residual contamination it left or continues to release onto or under the Property, soil, ground water or the environment.

## TENTH CLAIM FOR RELIEF
## (EQUITABLE AND IMPLIED INDEMNITY AND CONTRIBUTION)

136. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

137. Through use and/or operations at the Property, the Defendants are legally responsible for the contamination on and underlying the Property and nearby areas.

138. As a direct and proximate result of the acts and/or omissions of the Defendants set forth above, the Plaintiffs have expended and will continue to expend monies to investigate, test, and clean up the contamination on and underlying the Property and nearby areas, which is the responsibility of the Defendants, and the Plaintiffs have incurred other significant damages.

139. As the contractor with the current owner of the Property, the Plaintiffs have been required to investigate, test, and clean up the contamination on, under, adjacent to and downgradient from the Property and the surrounding areas. The Plaintiffs however have paid for and conducted more than their fair share of such activities, and therefore have incurred and will continue to incur costs and expenses for the past, current and future investigation, clean up, remediation, and removal actions associated with the hazardous substances and contaminants at, on, under, adjacent to and downgradient of the Property and the surrounding areas pursuant to applicable laws and regulations.

140. The Plaintiffs are entitled to contribution from the Defendants under California Civil Code § 1432 or indemnification under state or federal law for any liability arising from the contamination of the Property.

141. The Plaintiffs are entitled to indemnity from the Defendants for all such monies expended and to be expended by the Plaintiffs to remedy the contamination on, underlying and near the Property, and for all other damages incurred by the Plaintiffs.

**COMPLAINT**
Burrows and Roessler v. Perry, et al.
Case No. _____

## ELEVENTH CLAIM FOR RELIEF
## (DECLARATORY RELIEF)

142. The Plaintiffs reallege each of the foregoing paragraphs of this complaint and incorporate them herein by reference as though set forth in full herein.

143. Defendants, and each of them, are responsible the contamination on, under, adjacent to and downgradient from the Property and the surrounding areas based on their acts and/or omissions at the Property. Defendants, and each of them, are responsible for their fair share of all monies expended and to be expended to ensure the proper clean up of the contamination at and surrounding the Property.

144. The Plaintiffs are informed and believe, and thereon aver, that Defendants, and each of them, deny that they, and each of them, are responsible for said contamination and for all monies expended and to be expended to ensure the proper cleanup of the contamination into the future.

145. An actual controversy has arisen and now exists between the Plaintiffs and all Defendants, and each of them, concerning Defendants' respective liabilities for the investigation, testing, and cleanup of the contamination on, under, adjacent to and underlying the Property and the surrounding areas and the costs and expenses therefor.

146. A judicial determination is necessary and appropriate at this time in order that the Plaintiffs and Defendants may ascertain liability, if any, with respect to the ongoing investigation, testing, remediation and clean up of the contamination at the Property and the costs and expenses therefor, and the Plaintiffs' damages resulting from the contamination on, under, adjacent to and downgradient from the Property and the surrounding areas.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against the Defendants, and each of them, as follows:

1.   For general economic and consequential damages in an amount to be determined at the time of trial;

2.   For costs for the investigation, testing, remediation and clean up of the contamination on, under, adjacent to or downgradient from the Property and the surrounding areas in an amount to be determined at the time of trial;

3.   For diminution of the fair market value of the Property in an amount to be determined at the time of trial;

4.   For loss of use of the Property in an amount to be determined at the time of trial;

5.   For prejudgment interest on all sums expended in an amount to be determined at the time of trial;

6.   For an order directing that Defendants, and each of them, indemnify the Plaintiffs for all sums expended or to be expended, for the testing, investigation, and clean up of the contamination on, under, adjacent to or downgradient from the Property and the surrounding areas and for the damages suffered by the Plaintiffs, including without limitation all necessary response costs;

7.   Treble damages for the costs associated with Defendants' noncompliance with the requirements of HSAA, as well as for waste;

8.   Declaratory relief establishing the Defendants' liability for environmental contamination at the Property;

9.   For a preliminary injunction and permanent injunction directing Defendants, and each of them, and their employees, agents, and persons acting in concert with them, to investigate and remediate completely the contamination on, under, adjacent to or downgradient from the Property and the surrounding areas in an expeditious manner;

**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

10. For Plaintiffs' attorney's fees and costs of suit; and

11. For such other and further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 19th day of October, 2007.

LAW OFFICES OF KARL R. MORTHOLE

Karl R. Morthole (CA Bar No. 112565)
LAW OFFICES OF KARL R. MORTHOLE
57 Post Street, Suite 801
San Francisco, California 94104
Tele: (415) 986-0227
Fax: (415) 986-1734


ATTORNEY FOR THE PLAINTIFFS

32
**COMPLAINT**
*Burrows and Roessler v. Perry, et al.*
*Case No. _____*

1  Karl R. Morthole (CA Bar No. 112565)
2  LAW OFFICES OF KARL R. MORTHOLE
    57 Post Street, Suite 801
3  San Francisco, California 94104
    Tele: (415) 986-0227
4  Fax: (415) 986-1734
    E-mail: karl@mortholelaw.com
5

6  Attorney for Plaintiffs
    BRUCE A. BURROWS and
7  JAMES A. ROESSLER

8

                  UNITED STATES DISTRICT COURT
9              NORTHERN DISTRICT OF CALIFORNIA

10

11  BRUCE A. BURROWS and JAMES A.     CASE NO. _____
    ROESSLER,
12          Plaintiffs
                            CERTIFICATION OF INTERESTED
13                        ENTITIES OR PERSONS
14  v.

15  DWIGHT W. PERRY, CARLTON L.
    PERRY, KWANG SUK LEE, KUI JA LEE,
16  NAM SUN PARK AND SEUNG HEE
    PARK,
17          Defendants.
18  _____/

19  Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

20  named parties, there is no such interest to report.

21      RESPECTFULLY SUBMITTED this 19th day of October, 2007.
22

23                  LAW OFFICES OF KARL R. MORTHOLE

24

25                  Karl R. Morthole

26                  ATTORNEY FOR THE PLAINTIFFS

27

28                        33