1  **GREBEN & ASSOCIATES**
   1332 ANACAPA STREET, SUITE 110
2  SANTA BARBARA, CA 93101
   TELEPHONE: (805) 963-9090
3  FACSIMILE: (805) 963-9098

4
   Jan A. Greben, State Bar No. 103464
5
   Attorneys for Defendants and Cross-claimants
6  NAM SUN PARK and SEUNG HEE PARK

7

8              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
9

10

| | |
|---|---|
| 11  BRUCE A. BURROWS and JAMES A. ROESSLER, | **Case No. 3:07-cv-05354-MHP** |
| 12 | COMPLAINT FILED:        10/19/07 |
| Plaintiffs, | TRIAL DATE:        None Set |
| 13 | |
| vs. | |
| 14 | |
| 15  DWIGHT W. PERRY, CARLTON L. PERRY, KWANG SUK LEE, KUI JA LEE, NAM SUN PARK, and SEUNG HEE PARK, | **NAM SUN PARK AND SEUNG HEE PARK'S CROSSCLAIMS AGAINST DWIGHT W. PERRY, CARLTON L. PERRY, KWANG SUK LEE, KUI JA LEE, DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST** |
| 16 | |
| 17  Defendants. | |
| 18 | |
| 19  NAM SUN PARK and SEUNG HEE PARK, | |
| Cross-claimants, | |
| 20 | **DEMAND FOR JURY TRIAL** |
| vs. | |
| 21 | |
| 22  DWIGHT W. PERRY, CARLTON L. PERRY, KWANG SUK LEE, KUI JA LEE, DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, an individual, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST, | |
| 23 | |
| 24 | |
| 25  Cross-defendants. | |

26

27

28

                                    1
─────────────────────────────────────────────

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, NAM SUN PARK AND SEUNG HEE PARK'S (collectively "the PARKS") hereby assert their crossclaims against DWIGHT W. PERRY, CARLTON L. PERRY, KWANG SUK LEE, KUI JA LEE, DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST (collectively hereafter referred to as "Cross-defendants") as follows:

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

1.    The PARKS' crossclaims arise out of the environmental contamination at 7272 San Ramon Road, later renumbered 7242 San Ramon Road, in Dublin, California ("Property") alleged in the Complaint of BRUCE A. BURROWS and JAMES A. ROESSLER ("Plaintiffs").

2.    This Court has jurisdiction over the subject matter of these crossclaims under the provisions of 42 U.S.C. § 9613(b); 42 U.S.C. 6972(a) and 28 U.S.C. § 1367(a).  Venue is proper under the provisions of 42 U.S.C. §§ 9613, 6972(a) because the claims stated herein arose in this district.  Intradistrict assignment is proper in this Court under the local rules as the property that is the subject matter of this action and a substantial portion of the events or omissions giving rise to these claims occurred in this judicial district, in Alameda County.

### THE PARTIES

3.    Cross-defendant Dwight W. Perry is a natural person residing in the City of Castro Valley, County of Alameda, State of California.

4.    Cross-defendant Carlton L. Perry is a natural person residing in the State of Oregon.

5.    Cross-defendant Kwang Suk Lee is a natural person residing in the City of San Leandro, County of Alameda, State of California.

6.    Cross-defendant Kui Ja Lee is a natural person residing in the City of San Leandro, County of Alameda, State of California.

2

7.  Cross-defendant Dublin Town & County Associates is a partnership, who at relevant times was doing business in the County of Alameda, State of California.

8.  Cross-defendant William F. Kartozian, is a natural person and general partner of Dublin Town & County Associates, who at relevant times was doing business in the County of Alameda, State of California.

9.  Cross-defendant Gabriel H. Chiu, as trustee of the Chiu Family Trust, is a natural person, who at relevant times was doing business in the County of Alameda, State of California.

10.  Cross-claimant Nam Sun Park is a natural person residing in the City of Dublin, County of Alameda, State of California.

11.  Cross-claimant Seung Hee Park is a natural person residing in the City of Dublin, County of Alameda, State of California.

## GENERAL ALLEGATIONS

12.  The PARKS are informed and believe, and thereon allege, that Cross-Defendants DWIGHT W. PERRY and CARLTON L. PERRY operated a dry cleaning business at the Property from on or about April 1985 until on or about August 1994.

13.  The PARKS are informed and believe, and thereon allege, that Cross-Defendants KWANG SUK LEE and KUI JA LEE (collectively "the LEES") operated a dry cleaning business at the Property from on or about August 1994 until on or about December 1999.

14.  The PARKS are informed and believe, and thereon allege, that Cross-defendants DUBLIN TOWN & COUNTRY ASSOCIATES, and WILLIAM F. KARTOZIAN, as general partner of Dublin Town & County Associates, were owners and landlord of the Property at times relevant to these crossclaims.  The PARKS are informed and believe, and thereon allege, that

Cross-defendants DUBLIN TOWN & COUNTRY ASSOCIATES, and WILLIAM F. KARTOZIAN sold the Property to the CHIU FAMILY TRUST in March 2005.

15.    The PARKS are informed and believe, and thereon allege, that Cross-defendant GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST is the current owner of the Property and became owner of the Property on or about March 2005.

16.    The PARKS have operated a dry cleaner at the Property since on or about December 1999.

17.    The PARKS are informed and believe, and thereon allege, that Cross-defendants, during each of their ownership and occupancies of the Property, caused or permitted the release of tetrachlorethylene ("PCE") and other dry-cleaning chemicals into the environment.

18.    As a direct and proximate result of Cross-defendants', and each of their, conduct and failure to act, the condition of the Property was such that it resulted in the release of hazardous substances onto the properties, and surrounding properties, soils, and groundwater.

## FIRST CROSSCLAIM

(Contribution Pursuant to CERCLA § 113(f))

19.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 18 as though fully set forth herein.

20.    The Property is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

21.    Each Cross-defendant is a liable or potentially liable person within the meaning of section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

22.    The Complaint filed by Plaintiffs constitutes a civil action within the meaning of section 113(f) of CERCLA, 42 U.S.C. § 9613(f)(1).

4

23.    The PARKS are entitled to one hundred percent contribution from Cross-defendants or contribution in such other percentage as this Court deems appropriate, pursuant to CERCLA § 113(f)(1).

## SECOND CROSSCLAIM

(Hazardous Substance Statutory Indemnity)

24.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 23 as though fully set forth herein.

25.    The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code Sections 25300, 25395 (hereinafter the "HSAA") was enacted to encourage expedient clean-up of contaminated properties. To provide such encouragement, the legislature included the statutory right of indemnification for those parties who incur response costs and those parties who are responsible for the contamination. The responsible parties include owners and operators of the facilities at the time the alleged hazardous substance is allegedly discharged into the environment for such facility.

26.    The PARKS may incur costs arising from the hazardous substance contamination of the soil and groundwater in and around the Property.

27.    Cross-defendants, and each of them, are liable persons under the HSAA due to their status as either owners of the property or arrangers of the disposal and discharge of hazardous substances on account of said Cross-defendants' actual and direct control of the method of disposal of PCE on the Property, and such liability has not previously been discharged pursuant to any state apportionment proceeding. The PARKS are entitled to indemnification and contribution from Cross-defendants, in whole or in part, based upon California Health & Safety Code Section 25363(e).

## THIRD CROSSCLAIM

(Equitable Indemnity)

28.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 27 as though fully set forth herein.

29.    In the event liability should be established in this action or in any administrative or regulatory action based on the contamination alleged in this action, whose liability is expressly denied, the PARKS allege on information and belief that such liability will arise wholly or partly by reason of the conduct of the Cross-defendants, and/or that Cross-defendants are jointly liable for said liability.  Cross-defendants, and each of them, are therefore, bound and obligated to defend, indemnify and hold harmless the PARKS from and against any and all claims, losses, damages, attorneys' fees, judgments and settlement expenses incurred, or to be incurred, in this action by the PARKS.

30.    The PARKS intend this crossclaim to be notification to Cross-defendants that the PARKS hereby tender to them the obligation to defend the PARKS.

31.    The PARKS have necessarily retained legal counsel at the PARKS' sole cost and expense and to prepare, file and prosecute counter- and cross-claims as set forth herein.  The PARKS have incurred, and will continue to incur, liability for attorneys' fees and defense costs and, in the prosecution of this crossclaim, a sum which is presently not ascertained but will be proven at trial.

## FOURTH CROSSCLAIM

(Declaratory Relief)

32.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 31 as though fully set forth herein.

6

33.    A determination of the proportionate degree of liability, if any, of the PARKS, on the one hand, and Cross-defendants, on the other, is necessary to protect the rights of the PARKS.

34.    An actual controversy has arisen and now exists relating to the legal rights and duties of the PARKS and Cross-defendants, and each of them, for which the PARKS desire a declaration of their rights and indemnification, in which the PARKS contend, and the PARKS are informed and believe, that Cross-defendants deny, the following:

A.    That as between these parties, the responsibility, if any, for the damages claimed by the PARKS rests entirely on Cross-defendants;

B.    That as a result, Cross-defendants are obligated to partially indemnify or fully indemnify the PARKS for sums that the PARKS may be held to pay as a result of any damages, judgments, settlement or other awards recovered against the PARKS by the federal or state government or private party as a result of the toxic chemical contamination of the Property, properties near and adjacent properties including, but not limited to, surface and subsurface soil and water; and

C.    The PARKS are informed and believe that Cross-defendants deny any such liability.

35.    The PARKS are entitled to, and hereby request, a judicial determination of the PARKS' rights, indemnification and contribution, any declaration that Cross-defendants and/or others, and not the PARKS, are liable for all of the costs incurred, and to be incurred to remove, clean-up and remediate the alleged hazardous substance contamination of the soil and groundwater in and around the Property.

**FIFTH CROSSCLAIM**

(Porter-Cologne Statutory Contribution)

36.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 35 as though fully set forth herein.

37.    The Porter-Cologne Act provides for statutory contribution to those persons who become liable for the investigation, clean-up and remediation of hazardous substance contamination to groundwater.  To the extent the PARKS incur costs and expenses in response to the alleged hazardous substance contamination of the soil and groundwater in and around the Property, the PARKS are statutorily entitled to contribution pursuant to Water Code Section 13350(j) and hereby request contribution and indemnification pursuant to that section as against the Cross-defendants.

**SIXTH CROSSCLAIM**

(Violation of RCRA- 42 U.S.C. § 6972(a)(1)(B))

38.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 37 as though fully set forth herein.

39.    The PARKS bring this action under the Resources Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq. (hereinafter "RCRA").  Cross-defendants, and each of them, have and are contributing to the past and present handling, storage, treatment, transportation and disposal of hazardous waste, which may present an imminent and substantial endangerment to health or the environment.

40.    The actions of Cross-defendants constitute violations of applicable law regarding the handling, storage, treatment, transportation and disposal of hazardous waste, including 42 U.S.C. §§ 6921 et. seq.; 6924.

**SEVENTH CROSSCLAIM**

(Continuing Private Nuisance)

41.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 40, as though fully set forth herein.

42.    Cross-defendants, and each of them, caused or permitted the contamination alleged in this action by their negligence, intentional or otherwise, actionable acts and/or omissions, as described herein.

43.    The contamination constitutes a nuisance within the meaning of Section 3479 of California Civil Code. Cross-defendants, and each of them, have interfered with the PARKS' right to quiet enjoyment of the Property.

44.    The PARKS are informed and believe, and on that basis allege, that the contamination is continuing and abatable.

45.    As a proximate result of the nuisance, the PARKS have been and will be damaged by incurring costs to respond to the alleged hazardous substance contamination in and around the Property in an amount to be established at trial. The PARKS have been and will be damaged by loss of use and constructive eviction of and from the Property.


**EIGHTH CROSSCLAIM**

(Public Nuisance)

46.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 45 as though fully set forth herein.

47.    The contamination on and about the Property constitutes a public nuisance within the meaning of California Water Code Section 13050(m), and California Civil Code Sections 3479 and 3480.

NAM SUN PARK AND SEUNG HEE PARK'S CROSSCLAIMS - 3:07-cv-05354-MHP

1    48.    The PARKS are informed and believe, and on that basis allege, that the

2    contamination is continuing and abatable.

3    49.    As a proximate result of the nuisance, the PARKS have been, and will be, damaged

4

5    by incurring costs to respond to the alleged hazardous substance contamination in and around the

6    Property in an amount to be established at trial.

7    50.    The PARKS have suffered, and will continue to suffer, harm that is different from

8    the type of harm suffered by the general public as a result of the public nuisance, as alleged

9    herein, because the PARKS have been sued by Plaintiffs and the contamination has interfered

10    with the PARKS' right to quiet enjoyment of the Property.

11

12

13    **NINTH CROSSCLAIM**

14    (Public Nuisance Per Se)

15    51.    The PARKS reallege and incorporate by reference the allegations contained in

16    Paragraphs 1 through 50 as though fully set forth herein.

17

18    52.    The PARKS allege that the conduct of Cross-defendants, and each of them, which

19    has resulted in contamination of soil and groundwater on and about the Property, and

20    surrounding properties, and constitutes a public nuisance, is a violation of California Water Code

21    Sections 13050(m), 13304, 13350, and 13387, and California Health & Safety Code sections

22    5411, 5411.5, and 117555, the purposes of which are to set a standard of care or conduct to

23

24    protect the PARKS, and all persons and property of the general public at large, as well as the

25    environment, from the type of conduct engaged in by Cross-defendants, and each of them.

26    Therefore, such improper activities and violations constitute a public nuisance *per se*.

27    53.    Cross-defendants, and each of them, have failed to comply with the state law as

28    detailed above. The PARKS have sustained special injury as a result of this public nuisance, as

10

the contamination has interfered with the PARKS' right to quiet enjoyment of the Property, as described herein.  As a further direct and proximate cause of the public nuisance *per se* created by Cross-defendants, and each of them, the PARKS have suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial. The PARKS seek abatement of the public nuisance, and all other legally available costs and damages.

## TENTH CROSSCLAIM

(Negligence)

54.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 53 as though fully set forth herein.

55.    The PARKS are informed and believe, and thereon alleges, that during Cross-defendants ownership and occupancy, sudden and accidental releases of PCE have occurred, resulting in contamination at the Property.  Some of the sudden and accidental releases are attributable to Cross-defendants' negligence in failing to properly operate, maintain, repair, and manage dry-cleaning equipment and the sewers and drainage system on the Property to avoid the release of hazardous substances into the environment.

56.    Cross-defendants, and each of them, breached their duty by negligently causing, permitting and/or contributing to contamination at the Property, surrounding properties, soils and groundwater.

57.    As a proximate result of Cross-defendants' negligence, the PARKS have suffered damages including, but not limited to, response costs incurred and to be incurred in the future to properly respond to the alleged hazardous substance contamination in and around the Property, and related properties.  Such costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of said negligence.

**ELEVENTH CROSSCLAIM**

(Negligence Per Se)

58.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 57 as though fully set forth herein.

59.    The foregoing acts and/or omissions attributed to Cross-defendants, and each of them, herein violate California Civil Code Sections 3281-3282; California Health & Safety Code Sections 5411, et seq.; California Water Code Sections 13000, et seq.; and Fish & Game Code Sections 5650, et seq.

60.    Cross-defendants, and each of them, have failed to comply with the state law as detailed above.  The PARKS have sustained injury as a result of the Cross-defendants' negligent conduct, including investigative costs, attorneys' fees, and other costs, as described herein.  As a further direct and proximate cause of the negligence per se by Cross-defendants, and each of them, the PARKS have suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

**TWELFTH CROSSCLAIM**

(Breach of Lease- Against DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST)

61.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

62.    The PARKS accepted assignment of the lease dated April 13, 1985 for the Property ("1985 Lease") in or about December 1999 from Kwang Suk Lee and Kui Ja Lee, previous lessees of the Property.

63.   The PARKS are informed and believe and thereon allege that DUBLIN TOWN & COUNTRY ASSOCIATES and WILLIAM F. KARTOZIAN were owners of the Property and lessor of the Property pursuant to the 1985 lease.

64.   The PARKS are informed and believe and thereon allege that DUBLIN TOWN & COUNTRY ASSOCIATES and WILLIAM F. KARTOZIAN assigned their rights and responsibilities pursuant to the 1985 lease to GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST, upon the purchase of the Property by GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST, in or about March 2005.

65.   As lessors, DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST, and each of them, breached said leases by, maintaining the Property, or failing to maintain the Property, including but not limited to the commonly used areas and facilities of the Property over which the PARKS had no control or duty, in such a manner as to cause hazardous substances to be released from the Property's, and into the soil and groundwater.

66.   Said conduct by DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST, is a breach of the lease, including but not limited to the general covenants of good faith and fair dealing and quiet enjoyment, but also including, but not limited to, lessors' obligations under the lease to operate, maintain, and repair the Property, including commonly used areas, common facilities, utilities, and accommodation areas, as defined in the lease, over which the PARKS had no control or duty, in such a manner as to not cause hazardous substance contamination.

67.   Pursuant to the 1985 Lease, the PARKS are entitled to attorneys' fees and costs incurred herein.

68.    As a direct and proximate result and cause of DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST's breaches of the lease, the PARKS have been injured and damaged, including incurring attorneys fees and costs,  in an amount to be proven at trial, but in excess of the jurisdictional limits of this court.

### THIRTEENTH CROSSCLAIM

(Waste- Against DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST)

69.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 68 as though fully set forth herein.

70.    The PARKS have an interest in the Property as tenants and present occupants of the Property.

71.    During their occupancy and ownership, DUBLIN TOWN & COUNTRY ASSOCIATES, WILLIAM F. KARTOZIAN, and GABRIEL H. CHIU, as trustee of the CHIU FAMILY TRUST have committed waste upon the Property by contaminating the Property with hazardous substances and failing to remediate the contamination.

72.    As a direct and proximate result of said waste, the PARKS have been damaged in an amount to be proven at trial for loss of use of the Property.

### FOURTEENTH CROSSCLAIM

(Attorneys' Fees Pursuant to CCP § 1021.5)

73.    The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 72 as though fully set forth herein.

74.    This action involves an important right affecting the public interest, namely the remediation of hazardous substances contamination.

14

75. The PARKS will confer a significant benefit on the general public or a large class of persons by the enforcement of the PARKS' rights in the action. This benefit includes requiring that property owners and past occupants be required to take responsibility for hazardous substances contamination on the property.

76. Attorneys' fees may properly be awarded to the PARKS because the necessity and financial burden of litigating this action.

77. It is in the interest of justice, that such attorneys' fees should not be paid out of any recovery obtained by the PARKS.

## FIFTEENTH CROSSCLAIM

(Breach of Contract/Sales Agreement- Against KWANG SUK LEE and KUI JA LEE)

78. The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 77 as though fully set forth herein.

79. On July 28, 1999, the PARKS and the LEES entered into a Sales Agreement for the Crow Cannon Cleaners, the dry cleaning business at the Property. Attached hereto as Exhibit "A", and incorporated herein by this reference, is a copy of the Sales Agreement "Sales Agreement".

80. In the Sales Agreement, the LEES warranted and represented to the PARKS that "no actions or proceedings, legal, equitable, administrative, arbitrative or otherwise are pending or threatened which might affect the property or this agreement." [Exhibit "A" ¶ 8.]

81. The LEES have breached this promise, as the LEES knew or should have known that because of contamination on the Property, attributable to the LEES, legal, administrative or other action or proceedings would be pending or threatened that would affect the Property.

82. The LEES have also breached the Sales Agreement by failing to disclose that their activities on the Property resulted in contamination of the Property.

83.   The PARKS have performed all their duties under the Sales Agreement.

84.   These claims arise out of the Sales Agreement, attached as Exhibit "A", between the PARKS and the LEES.   Pursuant to the Sales Agreement, the PARKS are entitled to attorneys' fees and court costs, in prosecuting and defending this action.

85.   As a direct and proximate result of said breach, the PARKS have been damaged in an amount to be proven at trial.

### SIXTEENTH CROSSCLAIM

(Express Contractual Indemnity- Against KWANG SUK LEE and KUI JA LEE)

86.   The PARKS reallege and incorporate by reference the allegations contained in Paragraphs 1 through 84 as though fully set forth herein.

87.   Pursuant to the Sales Agreement, the LEES agree to indemnify and hold the PARKS "harmless from any and all claims, damages, injuries and liabilities arising from or connected with the operation of the business" by the LEES.

88.   By way of this Crossclaim, the PARKS hereby notify the LEES of their obligation to defend and indemnify the PARKS against Plaintiffs' claim in this action and any claims arising in the future regarding the Crow Cannon Cleaners.

89.   The PARKS are informed and believe and thereon allege that any of Plaintiffs' damages, or any damages to any other party relating to the Property, if any, were directly and proximately caused and contributed to by the sole fault, and/or negligence, and/or strict liability and/or other actionable conduct of the LEES, and in breaching such terms and warranties in their agreements with the PARKS.

90.   The PARKS have been compelled to incur attorneys' fees, investigative, court, and other costs to protect itself in said litigation, and have, therefore, been damaged as a result of the breaches of the LEES of their respective duties and obligations under the contracts which

16

obligate the LEES to indemnify the PARKS for the full amount or some proportionate share, of any damages, which Plaintiffs or any other party may recover against the PARKS. This amount is not known, and there will be further expenditures in order for the PARKS to respond to the underlying complaint.

91.   These claims arise out of the Sales Agreement, attached as Exhibit "A", between the PARKS and the LEES.   Pursuant to the Sales Agreement, the PARKS are entitled to attorneys' fees and court costs, in prosecuting and defending this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the PARKS pray to this Court for the following relief:

1.      For recovery and contribution from Cross-defendants, and each of them, of all response costs incurred, and to be incurred by the PARKS, in response to the alleged release of hazardous substances in and around the Property according to proof at trial;

2.      For damages against the Cross-defendants, jointly and severally, in an amount equal to all response costs and all other costs incurred in investigating, removing, cleaning up and remediating the alleged hazardous substance contamination in an amount according to proof at trial;

3.      For compensatory damages according to proof including;

4.      For incidental and consequential damages according to proof;

5.      For a permanent injunction requiring Cross-defendants to investigate and remediate contamination on and around the Property;

6.      For prejudgment interest at the legal rate;

7.      For attorneys' fees and costs pursuant to the 1985 Lease, the Sales Agreement and CCP § 1021.5; 42 U.S.C. § 6972;

17

8.      For consultants' fees and costs;

9.      For a declaration that Cross-defendants, and each of them, are jointly and

severally liable for abating the nuisance on the Property;

10.     For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, the PARKS demand a trial by jury on all issues so triable.

Dated: January 7, 2008                    GREBEN & ASSOCIATES


_____

JAN A. GREBEN
Attorneys for Defendants and Cross-claimants
NAM SUN PARK and SEUNG HEE PARK

EXHIBIT "A"

# *SALES   AGREEMENT*

CROW CANNON CLEANERS

## AGREEMENT FOR PURCHASE AND SALE

**THIS AGREEMENT** FOR THE PURCHASE AND SALE OF **CROW CANNON CLEANERS** HEREINAFTER REFERRED TO AS "BUSINESS" IS ENTERED INTO AS OF THE DATE HEREBY AND BETWEEN   KWANG SUK LEE  AND  KUI JA LEE HEREINAFTER REFERRED TO AS "SELLER"  AND   NAM SUN PARK  AND SEUNG HEE PARK HEREINAFTER REFERRED TO AS "BUYER."

RECITALS

WHEREAS SELLER IS THE SOLE OWNER AND OPERATOR OF THAT CERTAIN BUSINESS KNOWN AS CROW CANNON CLEANERS, LOCATED AT 7272 SAN RAMON ROAD, DUBLIN, CALIFORNIA  AND

WHEREAS SELLER DESIRES TO SELL THE BUSINESS TO BUYER AND BUYER DESIRES TO BUY THE BUSINESS FROM SELLER;

NOW, THEREFORE IT IS AGREED THAT:

1]. IN CONSIDERATION OF THE TERMS AND MUTUAL COVENANTS AND CONDITIONS CONTAINED HEREIN, AND THE MUTUAL BENEFITS DERIVED THEREFROM, SELLER SELL TO BUYER AND BUYER SHALL PURCHASE FROM SELLER ON THE COVENANTS AND CONDITIONS SET FORTH IN THIS AGREEMENT THAT CERTAIN PROPERTY DESCRIBED AS FOLLOWS:

    (A) FIXTURE AND EQUIPMENT:   ALL THE ITEMS ARE LISTED ON THE "ATTACHMENT 1."

    (B) THE ENTIRE LEASEHOLD INTEREST OWNED BY SELLER FOR THE PROPERTY ON WHICH THE BUSINESS LOCATED;

    (C) ALL THE TRADE, GOODWILL AND OTHER INTANGIBLE ASSETS OF THE BUSINESS;

2]. THE TOTAL PURCHASE OF THE BUSINESS SHALL BE THE SUM OF FOUR HUNDRED FIFTY THOUSAND DOLLARS INCLUDING  MISC. INVENTORY.   THE PURCHASE PRICE IS ALLOCATED AS FOLLOWS:

    (A) FIXTURE AND EQUIPMENT....................................$_____

    (B) LEASEHOLD IMPROVEMENTS...............................$ _____

    • GOODWILL .............................................. $_____ _____

    (C) LEASEHOLD INTEREST......................................... $_____

(1)

## CONDUCT OF BUSINESS

3]. PRIOR TO THE DELIVERY OF THE PHYSICAL POSSESSION OF THE BUSINESS, ALL RISK OF LOSS, DAMAGE, OR DESTRUCTION TO SAID PROPERTY SHALL BE BORN BY SELLER AND PURCHASE PRICE FOR BUSINESS AND PROPERTY SHALL, IN CASE OF ANY SUCH LOSS, DAMAGE, OR DESTRUCTION BEING SUSTAINED BY THE BUSINESS AND PROPERTY, SHALL BE REDUCED ACCORDINGLY.

## ESCROW

4] SELLER AND BUYER HEREBY AGREE TO OPEN AN ESCROW ON OR BEFORE NOVEMBER 1, 1999.     THE ESCROW FEES SHALL BE SHARED EQUALLY BY SELLER AND BUYER.   AND BUYER SHALL DEPOSIT A MINIMUM OF FIVE THOUSAND DOLLARS (5,000.) INTO THE ESCROW ACCOUNT UPON THE EXECUTION OF ESCROW INSTRUCTION. BOTH PARTIES FURTHER AGREE THAT THE ESCROW SHOULD BE CLOSED AROUND JANUARY 15, 2000.

## POSSESSION

5]. SELLER SHALL DELIVER POSSESSION OF THE BUSINESS AND PROPERTY TO BUYER NO LATER THAN DECEMBER 30, 1999.     AND BUYER SHALL TAKE OVER THE BUSINESS AND PROPERTY FROM SELLER NO LATER THAN DECEMBER 30, 1999.

## INDEMNITIES

6]. SELLER AGREES TO INDEMNIFY AND HOLD BUYER AND THE PROPERTY FREE AND HARMLESS FROM ANY AND ALL CLAIMS, DAMAGES, INJURIES AND LIABILITIES ARISING FROM OR CONNECTED WITH THE OPERATION OF THE BUSINESS BY SELLER WHICH OCCUR PRIOR TO THE CHANGE OF POSSESSION, INCLUDING THIRD PARTY CREDITOR CLAIMS, WHETHER OR NOT SAID CALIMS ARE REFLECTED ON THE BOOKS OF THE BUSINESS; AND   BUYER SHALL INDEMNIFY AND HOLD SELLER, INCLUDING ANY INTEREST GIVEN SELLER AS SECURITY FOR THE PAYMENT OF ANY PORTION OF PURCHASE PRICE, FREE AND HARMLESS FROM ANY AND ALL CLAIMS, LOSSES, DAMAGES, INJURIES AND LIABILITIES ARISING FROM OR IN CONNECTION WITH THE OPERATION OF THE BUSINESS AFTER THE CHANGE OF POSSESSION.

## LEASEHOLD INTEREST

7]. SELLER SHALL ASSIGN AND TRANSFER ITS LEASEHOLD INTEREST IN THE BUSINESS PREMISES TO BUYER AND SHALL ASSIST BUYER IN OBTAINING THE CONSENT OF ASSIGNMENT FROM THE LANDLORD, DUBLIN TOWN & COUNTRY ASSOCIATE AT 318 DIABLO ROAD, SUITE 250, DANVILLE, CALIFORNIA. SELLER FURTHER GUARANTEES TAHT THE REMAINING TERM OF LEASE SHALL BE 5 YEARS (UNTIL AUG.6,2004) WITH 5 YEAR-OPTION.

## SELLER'S OBLIGATION

8]. SELLER HEREBY WARRANTS AND REPRESENTS TO BUYER THAT:

SELLER IS THE SOLE OWNER OF THE PROPERTY WITH FULL RIGHT TO SELL OR DISPOSE OF IT AS SELLER MAY CHOOSE AND THAT NO OTHER PERSON WHATSOEVER HAS ANY CLAIM, RIGHT, TITLE, INTEREST, OR LIEN IN, TO OR ON THE PROPERTY;

AND NO ACTIONS OR PROCEEDINGS, LEGAL, EQUITABLE, ADMINISTRATIVE, ARBITRATIVE OR OTHERWISE ARE PENDING OR THREATENED WHICH MIGHT AFFECT THE PROPERTY OR THIS AGREEMENT;

SELLER SHALL PROMPTLY OBTAIN ALL CERTIFICATES OF RELEASE AND OTHER REQUIRED DOCUMENTATION FROM ALL APPLICABLE GOVERNMENTAL AGENCIES, IF THOSE ARE NECESSARY.

SELLER SHALL ASSIST THE BUYER IN OBTAINING ALL NECESSARY PERMITS FOR THE OPERATION OF THE BUSINESS.

## BUYER'S OBLIGATION

9]. BUYER SHALL DEPOSIT TOTAL AMOUNT OF REMAINING BALANCE TO CLOSE THE ESCROW PRIOR TO JANUARY 15, 2000. BUYER SHOULD BE AT BUSINESS PREMISES DURING NORMAL BUSINESS HOUR FROM DECEMBER 1, 1999 UNTIL DECEMBER 30, 1999.

## MODIFICATION

10]. NO SUPPLEMENT, MODIFICATION, OR AMENDMENT OF THIS AGREEMENT SHALL BE BINDING UNLESS EXECUTED IN WRITING BY ALL THE PARTIES.

## CANCELLATION

11]. THIS CONTRACT SHALL BE CANCELLED WITHOUT ANY OBLIGATION IN THE FOLLOWING EVENT: (WHEN)

    A) LANDLORD DOES NOT APPROVE THE LEASE ASSIGNMENT;

    B) BUYER BECOME UNABLE TO OBTAIN THE ASB-LOAN;

    C) LANDLORD INCREASES RENT AT UNREASONABLE RATE;

    E) THERE IS A SUBSTANTIAL DIFFERRENCE IN THE AMOUNT OF MONTHLY GROSS SALE FROM THE AVERAGE OF $40,000. FOR THE MONTH OF DEC. 1999.

    F) BUYER BECOME UNABLE TO LIQUIDATE THE BUYER'S CURRENT BUSINESS PRIOR TO DECEMBER 30, 1999. IN SUCH EVENT, SELLER AND BUYER SHALL EXTEND THE DATES SET FORTH HEREIN IN ACCORDANCE WITH A MUTUAL AGREEMENT.

SELLER AND BUYER FURTHER AGREE THAT BUYER SHALL PAY A SECURITY DEPOSIT OF $ 50,000. IN THE FORM OF PERSONAL CHECK TO SELLER. AND THE AFORESAID SECURITY DEPOSIT SHALL BE FORFEITED IF BUYER VOLUNTARILY BREACHES THIS CONTRACT, UNLESS BUYER MEETS ONE OF THE PROCEDING CONDITIONS FOR CANCELLATION WITHOUT OBLIGATION.

SELLER FURTHER AGREES THAT SELLER SHALL REIMBURSE A DOUBLE AMOUNT OF SAID SECURITY DEPOSIT ($100,000.) TO BUYER IF SELLER VOLUNTARILY BREACHES THIS CONTRACT, UNLESS SELLER MEETS ONE OF THE PROCEDING CONDITIONS FOR CANCELLATION WITHOUT OBLIGATION.

## DEFAULT

12]. IN ANY ACTION, PROCEEDING OR ARBITRATION ARISING OUT OF THIS AGREEMENT, THE PREVAILING PARTY SHALL BE ENTITLED TO REASONABLE ATTORNEY'S FEES AND COURT COSTS.

## BINDING ON SUCCESSORS

THIS AGREEMENT SHALL BE INURE TO THE BENEFIT OF, AND BE BINDING UPON THE HEIRS, LEGAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS OF EACH PARTY HERETO.

** THIS CONTARCT IS MADE IN DULICATE.

**IN WITNESS WHEREOF** THIS 28TH DAY OF JULY 1999.        AT DUBLIN, CALIFORNIA.


SELLER:    KWANG SUK LEE          /S/
           NAME:  KWANG SUK LEE

           KUI JA LEE             /S/
           NAME:  KUI JA LEE


BUYER:     Nam Sun Park           /S/
           NAME: NAM SUN PARK

           Park Seung Hee         /S/
           NAME: SEUNG HEE PARK

5.

## ATTACHMENT 1.

In Re:  FIXTURE & EQUIPMENTS

| DESCRIPTION | QUANTITY |
| --- | --- |
| DRY CLEANING MACHINE   (40 LBS.) | 1 |
| LAUNDRY MACHINE | 1 SET |
| PRESS | 4 |
| LAUNDRY WASHER | 1 |
| BOILER | 1 |
| OVERLOOK SAWING MACHINE | 1 |
| CONVEYER | 2 |
| VACUUM | 1 |
| AIR COMPRESSURE | 1 |
| COMPUTER | 2 |
| ALARM SYSTEM | 1 |

*[handwritten notes in Korean and English:]*

Crow Canyon Cleaners 총 재정금액.

$ 450,000.- (Escrow $250,000)

$ 100,000.-

1/6/2000

이광 석

이 기자

STATE OF CALIFORNIA          )
                             )
COUNTY OF    ALAMEDA         )

On  July 28, 1999    before me,    Jong Hyun Lee         , a Notary
Public in and for said State, personally appeared _____
_____ KWANG SUK LEE  &  KUI JA LEE _____
_____personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose names(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Signature)

JONG HYUN LEE
COMM. # 1199139
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. NOV. 16, 2002

STATE OF CALIFORNIA          )
                             )
COUNTY OF  ALAMEDA           )

On  July 28, 1999, XX  before me,    Jong Hyun Lee        , a Notary
Public in and for said State, personally appeared _____
_____ NAM SUN PARK  &  SEUNG HEE PARK _____
_____personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose names(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Signature)

JONG HYUN LEE
COMM. # 1199139
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. NOV. 16, 2002