1  Greggory C. Brandt (Bar No. 189487)
   Alexandra L. Foote (Bar No. 225695)
2  **WENDEL, ROSEN, BLACK & DEAN LLP**
   1111 Broadway, 24th Floor
3  Oakland, CA  94607-4036
   Telephone:  (510) 834-6600
4  Fax:  (510) 834-1928

5  Attorneys for Cross-Defendants and
   Counterdefendants William F. Kartozian and Dublin
6  Town & Country Associates

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | BRUCE A. BURROWS and JAMES A.       | Case No.  C 07 5354 MHP
   | ROESSLER,                           |
12 |                                     | **MEMORANDUM OF POINTS AND
   |         Plaintiffs,                 | AUTHORITIES IN SUPPORT OF
13 |                                     | APPLICATION FOR RELIEF FROM
   |    vs.                              | DEFAULT**
14 |                                     |
   | DWIGHT W. PERRY, CARLTON L.         | Date:       June 30, 2008
15 | PERRY, KWANG SUK LEE, KUI JA        | Time:       2:00 p.m.
   | LEE, NAM SUN PARK AND SEUNG         | Courtroom:  15
16 | HEE PARK,                           | Judge:      Hon. Marilyn Hall Patel
   |                                     |
17 |         Defendants.                 |

18 | AND RELATED CROSS-ACTIONS.
19

20

21      Cross-Defendants William F. Kartozian and Dublin Town & Country Associates ("Cross-

22 Defendants") seek an order setting aside the March 24, 2008 entry of default against them.

23 William F. Kartozian, a partner in Dublin Town & Country Associates, received a copy of the

24 summons and complaint on or around January 29, 2008 and took immediate action to tender the

25 claim to the partnership's insurance carriers.  Through his various conversations with his broker

26 and one of the insurance carriers, Mr. Kartozian believed that Cross-Defendants rights were being

27 protected.  Mr. Kartozian did not receive any indication from attorneys in this action that a default

28 had or would been entered against Cross-Defendants.  Instead, on March 31, 2008, the insurance

1 carrier informed him that it would not provide a defense and he needed to retain his own attorney.
2 Mr. Kartozian took immediate steps to retain counsel and, despite having two eye surgeries in
3 early April, was able to retain counsel and file this motion within a few weeks. Cross-Defendants
4 also have several defenses to the claims, including a comprehensive right to indemnity from the
5 operators of the dry cleaners, have made diligent efforts to protect their rights and no prejudice
6 would result to any party if this motion is granted. For these reasons, the default should be set
7 aside.

## I.   FACTUAL BACKGROUND

A copy of the summons and complaint was left at Mr. Kartozian's home on January 29, 2008 and, according to the Proof of Service submitted by counsel for Nam Sun Park and Seung Hee Park (the "Parks"), was mailed to Mr. Kartozian on January 31, 2008. Mr. Kartozian took immediate steps to tender the cross-claim to his insurance carriers. On January 31, 2008, Mr. Kartozian sent the documents, including the summons and complaint, by FedEx to his insurance broker. Declaration of William F. Kartozian in Support of Application for Relief from Default ("Kartozian Decl."), ¶¶ 2-3.

Mr. Kartozian had conversations with the insurance broker over the next several weeks and believed that the insurance carriers would respond within the necessary time or would take other action to protect his interests. Kartozian Decl., ¶¶ 3-4. On March 19, 2008, Mr. Kartozian was told by Mr. Brunn that Fireman's Fund was in the process of assigning an attorney. Mr. Kartozian believed that Fireman's Fund had agreed to defend the claims. Kartozian Decl., ¶ 4.

On March 21, 2008, a representative of Fireman's Fund told Mr. Kartozian that it was gathering coverage information to determine if coverage existed. On March 31, 2008, when Mr. Kartozian again contacted Fireman's Fund he found out for the first time that Fireman's Fund would not be defending his interests and that he should retain his own attorney. Kartozian Decl., ¶ 5. Mr. Kartozian immediately took steps to retain counsel and, despite having two eye surgeries in early April, was able to retain counsel by April 11, 2008. Kartozian Decl., ¶¶ 6-7. Counsel for the Parks was immediately notified and this motion was filed one week after counsel was retained.

*MPA IN SUPPORT OF APPLICATION FOR RELIEF FROM DEFAULT - Case No. C 07 5354 MHP* - 2 -

000010.0001\845373.1

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

## II. LEGAL ANALYSIS

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure,[1] the court may set aside an entry of default upon a showing of good cause. The good cause analysis considers three factors: (1) whether the moving party engaged in culpable conduct that led to the default; (2) whether the moving party has a meritorious defense; or (3) whether setting aside the default would prejudice the non-moving party. *татCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The burden is on the moving party to show that each factor favors setting aside the default. (*Id.*) Cross-defendants can make each showing and the default should be set aside.

### A. Cross-Defendants' Failure to Timely Respond Was Not the Result of Culpable Conduct

A moving party's conduct is culpable only if "he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group Life Ins. Plan, supra,* 244 F.3d at 697 (emphasis in original, citations omitted). Intentional conduct, under the "good cause" standard for setting aside a default, requires something along the lines of willful or deliberate action or efforts made in bad faith. *Id.*

The standard of culpability also includes a consideration of whether the moving party's conduct was the result of a mistake, inadvertence and excusable neglect, as set forth in Rule 60(b). "Excusable neglect" is an equitable concept, not necessarily reserved for extraordinary circumstances. *Id.* at 696. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases, and is therefore not *necessarily* – although it certainly may be, once the equitable factors are considered – culpable or inexcusable." *Id.* at 697-698.

The evidence shows that Mr. Kartozian took immediate action to protect Cross-Defendants' interests and, until March 31, 2008, was under the mistaken belief that the cross-defendants interests were protected. His failure to answer was not intentional. His failure to answer was not willful or deliberate and, in fact, his actions show that he made repeated good

---

[1] All references herein to "Rules" are to the Federal Rules of Civil Procedure.

1  faith efforts to ensure that his interests and the interests of the Dublin Town & Country
2  Associates, were adequately protected.  Applying the standards set forth by Rule 55 and Rule 60,
3  and applying equitable factors, Mr. Kartozian's failure to respond in a timely manner can not be
4  considered to be culpable conduct.

### B. Cross-Defendants Have Meritorious Defenses to the Cross-Claims

The cross-claims allege that Cross-Defendants are liable for environmental contamination at and around a dry cleaner in a shopping center located in Dublin, California.  The dry cleaning establishment, known as Crow Canyon Cleaners, was operated by a series of individuals pursuant to a Shopping Center Lease Agreement dated April 3, 1985 ("1985 Lease").  The 1985 Lease was assigned from the original lessees to Kwang Suk Lee and Kui Jai Lee on or around August 8, 1994.  The Lees assigned their rights to Nam Sun Park and Seung Hee Park on or around December 7, 1999.  Declaration of Greggory C. Brandt in Support of Application for Relief from Default ("Brandt Decl."), Exhibits A-E.

Dublin Town & Country Associates is the former owner of the shopping center.  William F. Kartozian was, at relevant times, a partner in Dublin Town & Country Associates.  Cross-Defendants are not alleged to have operated the Crow Canyon Cleaners, but are purported to liable as the former owner of the shopping center, for allegedly failing to maintain unspecified portions of the "commonly used areas and facilities of the Property over which the PARKS had no control or duty" and for allegedly committing waste.  See, Nam Sun Park and Seung Hee Park's Crossclaims against Dwight W. Perry, Carlton L. Perry, Kwang Suk Lee, Kui Ja Lee, Dublin Town & Country Associates, William F. Kartozian, and Gabriel H. Chiu, as trustee of the Chiu Family Trust, ¶¶ 65. 71.

Cross-Defendants have several defenses to the cross-claims, as set forth in the proposed answer filed herewith.  Moreover, Cross-Defendants are the beneficiaries of several contractual provisions that provide complete defenses to the cross-claims.  For instance, paragraph 17(A) of the 1985 Lease required the Perrys, the Lees and the Parks to:

> comply with all laws, ordinances, orders and regulations affecting the Lease Premises, and the building in which the same are situated and their cleanliness, safety, occupation and use….Tenant shall not perform any acts or carry on any

practices that may injure adjoining buildings or be a nuisance or menace to other persons or businesses in the area or disturb the quiet enjoyment of any person. Tenant shall not conduct or, with knowledge, permit to be conducted any waste or public or private nuisance on the Leased Premises or any portion of the Shopping Center within which the same are located.

Paragraph 17(A) also provides indemnification of the landlord for any accident or other occurrence on or about the Property causing injury to property. Paragraph 20(D) of the Lease states, in pertinent part, that the lessees:

> covenant[] and agreed that neither Landlord or its agents, servants or employees, shall at any time or to any extent whatsoever be liable, responsible or in anywise accountable for any loss, injury, death or damage to person(s) or property which at any time may be suffered or sustained by Tenant or by any person(s)…whether or not such loss, injury, death or damage shall be caused by or in any manner result from or arise out of any act, omission or negligence of Tenant…and Tenant shall and herewith does forever indemnify, defend, hold and save Landlord, it agents, servants and employees free and harmless of, from and against any and all claims, liability, loss, costs, expense or damage whatsoever, including, but not by way of limitation, attorneys' fees, on account of any loss, injury, death, or damage occurring on, in, or about the Leased Premises, or arising from the use or occupancy of the Lease Premises, or in violation of any law, rule, ordinance, or regulation thereon.

Paragraph 32(A) of the 1985 Lease also states that the landlord shall not be liable "for any injury or damage to…property resulting from …leaks from any part of the Lease Premises or from the pipes, appliances or plumbing works or from the …subsurface or from any other place…or by any other cause of whatsoever nature."

The contractual provisions preclude any liability to Cross-Defendants for alleged releases from commonly used areas of the shopping center and for alleged waste. The provisions set forth above also provide indemnification against the common law claims and the CERCLA claim. See, e.g., *Cadillac Fairview/California, Inc. v. Dow Chemical Company,* 219 F.3d 1019, 1026 (holding that contractual provisions can be the basis for allocating 100% of CERCLA investigation and remediation costs to opposing party). Cross-Defendants have meritorious defenses to the crossclaims, which are sufficient to set aside the default that has been entered.

**C.     Setting Aside the Default Would Not Prejudice the Parks**

The default was entered against Cross-Defendants on or around March 24, 2008. Counsel for the Parks was informed of Cross-Defendants intention to move to set aside the default not later than the week of April 14, 2008. This motion was filed that same week, and less than four

weeks after the default was entered. The Cross-Defendants are participating in these proceedings, have contacted or made efforts to contact all counsel in this action and intend to appear at the May 1, 2008 Settlement Conference. Cross-Defendants have moved expeditiously and there would be no prejudice to the Parks or any other party if the default was set aside.

### III.   CONCLUSION

Mr. Kartozian did not ignore the documents that were left at his house on January 29, 2008. He immediately sent the documents to his insurance broker and, based upon information he obtained during his regular efforts to follow-up, was under the mistaken belief that Fireman's Fund had agreed to defend the claims against himself and Dublin Town & Country Associates and was protecting his interests. As soon as he discovered that Fireman's Fund was not protecting his interests, he took immediate action to retain counsel and set aside the default. Any misunderstandings were a result of mistake, inadvertence and/or excusable neglect and not any culpable conduct. Furthermore, Cross-Defendants have meritorious defenses to the cross-claims, as set forth in the 1985 Lease and the proposed answer submitted herewith, and setting aside the default would not result in prejudice to any party. This court should find that good cause exists to set aside the default entered on or around March 24, 2008.

Dated: April 18, 2008                                         Wendel, Rosen, Black & Dean LLP


By: /s/ Greggory C. Brandt
   Greggory C. Brandt
   Attorneys for Cross-Defendant and
   Counterdefendants William F. Kartozian and
   Dublin Town & Country Associates